Scott F. Gibson, #010884
SGibson@DentonPeterson.com
**DENTON PETERSON DUNN**
ATTORNEYS & COUNSELORS AT LAW
930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| NEXA Mortgage, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Kristine Wake, an individual; Does 1 through 25, inclusive<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br>**(Violation of 15 U.S.C.§ 1125(d), Breach of Contract, Breach of Duty of Loyalty, Unfair Competition, and Misappropriation of Trade Secrets)** |

Plaintiff NEXA Mortgage LLC ("NEXA" or "PLAINTIFF"), for its Complaint against Defendant Kristine Wake ("WAKE" or "DEFENDANT") hereby states and alleges as follows:

## INTRODUCTION

1. NEXA brings this action against WAKE for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C.§ § 1125(d), and for various common law claims arising from her solicitation of NEXA employees and her misappropriation and retention of NEXA's trade secrets and confidential business information, including documents and information regarding and NEXA's Mortgage Academy Training Program.

2. This Court has jurisdiction over this matter for the reasons set forth below.

**PARTIES, JURISDICTION, AND VENUE**

3. NEXA is an Arizona limited liability company with its principal place of business at 3100 W Ray Road, Chandler, Arizona 85226.

4. WAKE is an individual who, upon information and belief, currently resides in Ormond Beach, Florida.

5. WAKE is a former employee of NEXA.

6. NEXA is ignorant as to the true names and capacities of Defendants sued as DOES 1 through 25, inclusive, and therefore sues these Defendants by such fictitious names. NEXA will amend this Complaint to allege the true names and capacities of said DOE Defendants when the same have been ascertained, along with any appropriate charging allegations.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims arise under federal law, specifically 15 U.S.C.§ 1125(d). The Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between NEXA and DEFENDANT and the amount in controversy exceeds $75,000. Further, this Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district

**GENERAL ALLEGATIONS**

9. NEXA hired WAKE as an Outside Loan Officer, pursuant to an Outside Loan Officer Employment Agreement dated May 1, 2020, which was replaced and superseded by an Outside Loan Officer Agreement dated February 7, 2024 ("AGREEMENT"), attached hereto as Exhibit 1. The provisions of each agreement, including the restrictive covenants described herein, are substantially similar.

10. The AGREEMENT prohibits DEFENDANT from using NEXA's Confidential Information for her own benefit or for the benefit of any third-party and precludes the

interference with NEXA's business and/or solicitation of any NEXA employee to leave NEXA or join another entity. Specifically, the AGREEMENT provides, *inter alia*, that:

    a.    All NEXA business methods, leads, loan programs, advertising programs, referral sources, marketing strategies, software, investor lists, and employer's documentation ("Confidential Information") have been developed through the expenditure of substantial time, effort, and money which NEXA wishes to maintain in confidence and which DEFENDANT is prohibited from disclosing to any third party;

    b.    All documents, files, electronic records or data, or records or materials of any sort pertaining to NEXA's business are the sole property of NEXA, which DEFENDANT has no right to keep or use following the termination of her employment;

    c.    For a period of twelve (12) months following her termination date, DEFENDANT is prohibited from interfering with NEXA's business and/or soliciting any customer or client that had closed a loan with NEXA during the preceding 12-month period to refinance or otherwise prematurely payoff said loan; and

    d.    For a period of twelve (12) months following her termination date, DEFENDANT is prohibited from directly or indirectly soliciting any NEXA employee or contractor to leave NEXA or join or form another entity or otherwise interfere with NEXA's business.

(*See* Exhibit 1, § V.)

11.    WAKE was privy to NEXA's confidential business, marketing, and training information and documents by virtue of her employment with NEXA, including sensitive information regarding NEXA's competitive business strategies that WAKE was privy to by virtue of her inclusion in management meetings. NEXA took reasonable steps to protect the confidentiality of that business information. In particular, WAKE was in charge of a training

program known as the Mortgage Academy Training Program (the "Academy"), through which she was also privy to NEXA's confidential information, training, and procedures

12. The Academy is a unique training program developed by NEXA exclusively for the training and benefit of select NEXA employees. Through her employment at NEXA, WAKE developed the training and procedures used for the Academy. Those materials were unique to NEXA's program. Among the training modules included as part of the Academy were programs on core marketing, obtaining referrals from realtors, social media marketing, pricing, and step-by-step instruction for various phases of the mortgage application and approval process, developed based on policies and procedures unique to NEXA and the Academy.

13. NEXA's Academy was the only one of its kind in the industry and served as an effective recruiting tool for NEXA because it was able to offer new loan officers a structured education program designed to help maximize their productivity and profitability.

14. NEXA learned in September 2024 that WAKE was involved in an effort to create or manage a competing company ("NEXXT LEVEL MORTGAGE"). As part of her involvement, WAKE solicited approximately twelve (12) NEXA employees for that competing business, while she was still employed by NEXA.

15. DEFENDANT used her role at NEXA, including her involvement in NEXA's Mortgage Academy Training Program, and resulting access to NEXA's confidential, competitive, and proprietary information and computer systems, to help her solicit NEXA employees for the competing business.

16. Having developed the training modules and procedures, WAKE was well aware of the confidential nature of the Academy and its value to NEXA. Nevertheless, WAKE took the confidential materials with her when she left the company and, upon information and belief, is using the training program developed under NEXA's umbrella for her own benefit and/or that of her new employer.

17. Ironically, while soliciting NEXA employees, WAKE asked the employees to sign

4

a Non-Disclosure Agreement ("NDA") (attached hereto as Exhibit 2) in connection with her solicitation and related discussions. She apparently did so to protect her own so-called confidential information while simultaneously using confidential information obtained from NEXA (both in her role as a loan officer as well as her leadership role in the Academy) in her efforts to form a competing entity.

18. DEFENDANT knew or should have known that she was prohibited from continuing to access and use NEXA's confidential and proprietary information and systems as, even prior to the termination of her employment, she was acting on her own behalf, in competition with NEXA and against NEXA's interests, and wrongfully using her access to NEXA's information and systems to do so.

19. NEXA suspended WAKE and ultimately terminated her employment with the company as a result of her misconduct described herein and breaches of the obligations set forth in her AGREEMENT.

20. Following the termination of her employment with NEXA, WAKE continued to wrongfully and intentionally misappropriate and use NEXA's confidential and competitive business and training information, including information and materials developed for NEXA's Academy, for her own benefit and for the benefit of her subsequent employer, Platinum One Lending, LLC ("PLATINUM ONE").

21. Upon information and belief, WAKE continues to wrongfully use NEXA's confidential information for her own benefit and that of PLATINUM ONE to this day.

22. Moreover, WAKE appropriated and, upon information and belief, maintains an internet domain name associated with NEXA's Mortgage Academy Training Program, namely, "WhyNexaAcademy.com," which she has refused to release to NEXA unless she is paid a fee of $18,000.

23. Upon information and belief, WAKE has further breached her contractual obligations by soliciting and/or attempting to solicit a dozen NEXA employees to join PLATINUM ONE, after her efforts to start and manage NEXXT LEVEL MORTGAGE failed.

24. NEXA has incurred and continues to incur damages as a result of WAKE'S wrongful conduct described herein, in amounts in excess of $75,000.

**COUNT I**
**Violation of Anti-Cybersquatting Consumer Protection Act – 15 U.S.C.§ 1125(d)**

25. NEXA incorporates by reference the allegations set forth above as though fully set forth herein.

26. Beginning no later than 2017, NEXA used the service mark "NEXA" in connection with financial services in the field of mortgages and real estate.

27. NEXA further uses the name "NEXA Academy" in connection with its training program for loan officers.

28. NEXA is the registered owner of the service mark NEXA Mortgage (the "Registered Marks"), Reg. Nos. 7,455,342 and 7,455,343.

29. While she was employed by NEXA, WAKE registered the domain "whynexaacademy.com" (the "Domain Name") as part of her job responsibilities with NEXA.

30. Although she procured the Domain Name as part of her job responsibilities with NEXA, WAKE did not register the domain in the name of NEXA. On information and belief, WAKE registered the Domain Name in her own name.

31. The Registered Marks were distinctive at the time WAKE registered the Domain Name.

32. WAKE has refused to turn over the Domain Name to NEXA.

33. WAKE registered the Domain Name without regard to the goods or services of the parties.

34. WAKE's registration of the Domain Name constitutes an act of cyberpiracy prohibited by 15 U.S.C.§ 1125(d).

35. By refusing to turn over the Domain Name to NEXA, WAKE committed an act of cyberpiracy prohibited by 15 U.S.C.§ 1125(d).

36. WAKE has a bad faith intent to use the Domain Name to profit from the

6

Registered Marks.

37. WAKE has demanded an exorbitant fee to release the Domain Name.

38. Because of WAKE's misconduct, NEXA has suffered and continues to suffer irreparable harm.

39. NEXA is thus entitled to injunctive relief, compensatory and statutory damages, in addition to attorneys' fees and costs.

## COUNT II
## **BREACH OF CONTRACT**

40. NEXA incorporates by reference the allegations set forth above as though fully set forth herein.

41. The AGREEMENT is a valid enforceable contract between NEXA and WAKE, the relevant provisions of which survive the termination of WAKE's employment with NEXA.

42. WAKE breached her contractual obligations by, among other things, improperly accessing, retaining, and using NEXA's confidential business, competitive, and training information for her own benefit and for the benefit of PLATINUM ONE.

43. WAKE further breached her contractual obligations by interfering with NEXA's business and soliciting and/or attempting to solicit NEXA employees to join NEXXT LEVEL MORTGAGE and/or PLATINUM ONE.

44. NEXA has incurred and continues to incur damages as a result of WAKE's conduct, in amounts in excess of $75,000.

## COUNT III
## **BREACH OF DUTY OF LOYALTY**

45. NEXA incorporates by reference the allegations set forth above as though fully set forth herein.

46. WAKE owed a duty to NEXA to act with good faith and loyalty and in furtherance of NEXA's interests.

47. While she was employed with NEXA, WAKE owed a duty of loyalty to NEXA.

48. The duty of loyalty governed all of WAKE's conduct within the scope of her employment.

49. The duty of loyalty required WAKE to act in an honest, faithful, and loyal manner toward NEXA.

50. The duty of loyalty included a duty to render loyal and conscientious service to NEXA during the term of her employment.

51. The duty of loyalty prohibited WAKE from competing with NEXA concerning the subject matter of her employment.

52. The duty of loyalty required WAKE to act solely for the benefit of NEXA in all matters connected with her employment.

53. The duty of loyalty prohibited WAKE from acquiring a private interest antagonistic to that of NEXA.

54. The duty of loyalty prohibited WAKE from soliciting business from NEXA's customers while she was still employed by NEXA.

55. The duty of loyalty prohibited WAKE from soliciting NEXA's employees to work with a competing business.

56. The duty of loyalty required WAKE to further NEXA's interests even at the expense of her own interests in matters connected to her employment.

57. The duty of loyalty prohibited WAKE from using confidential information acquired through her employment in competition with NEXA.

58. The duty of loyalty prohibited WAKE from disclosing NEXA's confidential information to others.

59. Even after WAKE's employment with NEXA ended, the duty of loyalty prohibited her from disclosing trade secrets, lists of names, or other confidential information given to her solely to enable her to perform her job with NEXA.

60. The conduct alleged above constitutes a breach of WAKE's duty of loyalty to NEXA.

8

61. As a direct and proximate result of that breach, NEXA has been damaged.

62. WAKE breached her duty of loyalty to NEXA by using her position and access to NEXA's confidential and competitive business information to further her own interests and those of third parties, including, without limitation, by soliciting and/or attempting to solicit NEXA employees to join a competing business.

63. WAKE's conduct was done with an evil hand guided by an evil mind, thus entitling NEXA to an award of punitive damages.

64. NEXA has incurred and continues to incur damages as a result of Wake's conduct, in amounts in excess of $75,000.

## COUNT IV
## UNFAIR COMPETITION

65. NEXA incorporates by reference the allegations set forth above as though fully set forth herein.

66. As an employee of NEXA, DEFENDANT owed NEXA a duty of loyalty and a duty not to compete with NEXA.

67. DEFENDANT breached these duties by wrongfully using her position with NEXA and access to NEXA's confidential and proprietary information to compete with NEXA while still employed with the company and solicit other NEXA employees to join her, thereby encouraging other NEXA employees to breach their own duties owed to NEXA.

68. NEXA has incurred and continues to incur damages as a result of DEFENDANT'S conduct, in amounts in excess of $75,000.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS

69. NEXA incorporates by reference the allegations set forth above as though fully set forth herein.

70. During her employment with NEXA and her involvement in NEXA's Mortgage Academy Training Program, WAKE had access to Plaintiff's confidential information and trade secrets (the "Trade Secrets"), including NEXA's confidential business, competitive, and

training information.

71. The Trade Secrets have independent economic value from not being generally to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

72. NEXA took reasonable steps to maintain the secrecy of the Trade Secrets.

73. WAKE has misappropriated the Trade Secrets through improper means.

74. WAKE has disclosed the Trade Secrets.

75. WAKE is threatening additional disclosure of the Trade Secrets.

76. NEXA has been and will be damaged as a result of the actual and threatened misappropriation.

77. Pursuant to A.R.S. § 44-403, NEXA is entitled to recover damages as a result of the misappropriation.

78. WAKE willfully and maliciously misappropriated the Trade Secrets, thus entitling NEXA to exemplary damages under A.R.S. § 44-403(B).

79. WAKE had and continues to have a duty to maintain the confidentiality of such trade secret information but has used and, upon information and belief, continues to use NEXA's trade secret information for her own benefit and against NEXA's competitive and business interests, in violation of contractual and other duties owed to NEXA.

80. NEXA has incurred and continues to incur damages as a result of WAKE's conduct, in amounts in excess of $75,000.

**JURY DEMAND**

Plaintiff demands a jury trial on its Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, NEXA respectfully requests the order and judgment of this Court in its favor and against DEFENDANT as follows:

1. For an order compelling DEFENDANT KRISTINE WAKE to turn over the Domain

Name to NEXA;

2. For compensatory, contractual, and actual damages in an amount to be proven at trial, but not less than $75,000;

3. For punitive damages;

4. For pre- and post-judgment interest as allowed by law; and

5. For such other and further monetary or equitable relief as the Court deems just and proper.

Dated May 2, 2025.

**DENTON PETERSON DUNN, PLLC**

/s/ Scott F. Gibson
Scott F. Gibson
1930 N. Arboleda Road, Suite 200
Mesa, AZ  85213
*Attorneys for Plaintiff NEXA Mortgage, LLC*

11